Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the hustings court of the city of Richmond, rendered on the 17th day of June 1875, convicting the plaintiff in error, Roger D. Burress, of the forgery of a certain order, and sentencing him therefor to confinement, in the penitentiary for the term of two years; the period by the jurors in their verdict ascertained.
The said order is described in the indictment as being of the following purport and effect, to wit:
“Messrs. Parker & Co. will please pay to Thomas *936 Moore, or order, the sum of forty-seven dollars and 23c., and charge to my account.
Resp’t’y, Allen & Bro.
Jeb> 24th, 1875.”
There were two counts in the indictment, the first was for the forgery of the order, the second for uttering the forged order, knowing it to be forged. The conviction was of the offence charged in the first count.
Several questions arose and were decided in the progress of the case in the court below, to most of which decisions exceptions were taken, the bills of exceptions so taken being four in number. The plaintiff, in his petition for a writ of error, assigns six errors in the judgment; which assignments of error we will notice in their order.
1. The first is, that it was error not to have remanded the prisoner for examination for the felony charged in the indictment.
This assignment of error is founded on the first bill of exceptions; which states that upon the calling of the case, the prisoner “moved that he be sent back to be examined for the felony for which he is indicted; to which the attorney for the commonwealth objected by vouching the certificate of the police justice in the case, and claimed that the prisoner had been examined before a justice of the peace, which certificate is in the words and figures following to-wit:
“ City of Richmond, to-wit:

To the clerk of the hustings court of said city:

I, J. J. White, police justice of the said city, do hereby certify, that I have this day committed to jail R. D. Burress, for his appearance before the hustings *937 ■court of said city, on the first day of the June term thereof, to answer in the said court for a felony by him committed, in this, that he did, on or about the day of February 1875, in the said city, feloniously forge, utter and attempt to employ as true, a certain forged order in writing for money, purporting to be the order of Allen & Bro. on Parker & Co., for the sum of forty-seven dollars and twenty-three cents, and of the following words and figures, to-wit:
‘ Messrs. Parker & Co. will please pay to Thomas Moore, or order, the sum of forty-seven dollars and ■tweriiy-three cents, and charge to my account.
Kespectfully, Allen & Bro.
Feb’y 24th, 1875.’
with intent to defraud. Given under my hand, this '7th day of June 1875.
J. J. White, police justice.”
“And the court thereupon sustained the objection of the commonwealth’s attorney, and overruled the motion of the prisoner, to which ruling of the court” the prisoner excepted.
We are clearly of opinion that there was no error in the said ruling of the court. Even the record of an examining court when that court was in existence, was not required to be as special as an indictment. See 3 Rob. Old Pr. pp. 121-124, and the cases cited, especially Halkem’s case, 2 Va. Ca. 4; and Mabry’s case, Id. 396; in which latter case R. E. Parker, J., delivering the opinion of the court, states the law on the subject very fully and clearly. Certainly the proceedings before an examining justice under the present law, cannot be required to be more special than were the proceedings before an examining court *938 under the former law.- The only variances between the forged order as set out in the certificate, and as set out in the indictment, if variances they can be called for any purpose, consist of the following: that “ Thos.” in the latter is written “Thomas” in the former; “ 23c.” in the latter is written “twenty-three cents”' in the former; and “Resp’t’y” in the latter, is written “Respectfully” in the former.” How these are certainly immaterial variances in regard to the question whether the prisoner had been examined before a justice for the offence for which he was indicted, and it clearly appears that he had been so examined.
2. The second assignment is, that “ it was error in the court to have sustained the commonwealth’s demurrer to the prisoner’s plea of a former acquittal, and to have rejected the plea.”
This assignment of error is not founded on any bill of exceptions, but upon proceedings otherwise had in the case, which sufficiently appear in the record. After-the court had overruled the motion of the prisoner to remand him as aforesaid, and also his motion to quash the indictment, and his demurrer to said indictment and each count thereof, (on the decisions of the court in regard to which two latter motions no errors are assigned or complained of), the prisoner tendered to the court a special plea in writing (verified by his affidavit) of former acquittal of the same offence; and the said plea being seen and inspected, the attorney for the-commonwealth craved oyer of the record in the said plea mentioned, and demurred to the said plea, which demurrer was sustained by the court; arid the court rejected the said plea, which plea is set out in words and figures in the record of this case. From which it appears that, on the 12th day of May 1875, the prisoner was acquitted on another indictment for felony, which *939 had been found against him, and which is set out in the said record as a part thereof. The plea, after, setting out the record on the judgment of which was on a verdict of not guilty, rendered on the plea of not guilty, states that the “ said judgment still remains in full force and effect; and the said Roger D. Burress avers* and in fact says, that he, the said Roger D. Burress, and the Roger D. Burress, so indicted and acquitted as aforesaid, are one and the same person, and not other and different persons; and that the felony of which the said Roger D. Burress was indicted and acquitted as aforesaid, and the felony of which the said Roger JD. Burress is now indicted, are one and the same, and not different felonies. And this the said Roger D. Burress is ready to verify,” &e.
There can be no doubt but that the two indictments were intended to. be for the same felony, and that the prisoner was acquitted on the first indictment, upon the ground of a variance between the order described and set out in that indictment, and the order exhibited on the trial as the subject of the forgery charged in the indictment. That variance consisted only in this: that in the order set out in the indictment, the amount is specified as “forty-seven dollars and 25 c.;” whereas in the order offered as evidence in support of the charge, the amount is specified as “forty-seven dollars 23 e.” Now this appears to be, and in fact is, a very small difference; but it is a difference, and in contemplation of law, and as to the case under consideration, it stands on the same footing, and is governed by the same principle, as if the difference were ever so large in amount. An order for 25 e. is not an order for 23 e., and the prisoner was therefore entitled to his acquittal under the former indictment, upon the ground of a fatal variance between the allegata and the probata; and *940 he was accordingly acquitted upon that ground. But the acquittal not being a bar to another indictment, setting out the order, the prisoner, instead of being discharged from custody on his said acquittal, was, on the motion of the attorney for the commonwealth, who stated that he desired to prefer another bill of indictment for' felony against him, before the grand jury to be in session at the next June term of the court, remanded to jail to answer the said indictment. And the witnesses were recognized accordingly.
The question of variance between the two indictments was properly raised by the commonwealth by craving oyer of the record of the first indictment, and demurring to the plea of former acquittal. For although the plea avers that the felonies charged in the two indictments are one and the same, the record shows that they are, as charged and in contemplation of law, not one and the same, but different. felonies. The verity of the record in this respect cannot be denied by plea, and a demurrer to a plea, containing such denial, is an admission of the plea only in subordination to the record, which is paramount and conclusive.
For the law on this subject of former acquittal, reference may be had to Archbold’s Criminal Practice and Pleading, Waterman’s notes, vol. 1, pp. 111-113 marg., and the cases there cited.
In Hite v. The State, 9 Yerger R. 357, a case very ably argued by counsel, and very well considered by the court, “ it was held, that to entitle the prisoner to the benefit of the plea of autrefois acquit, it is necessary that the crime charged in the last bill of indictment be precisely the same with that charged in the first, and also that the first indictment is good in point of law; that the true test to ascertain whether a plea of autrefois *941 acquit is a good bar, is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first; that where the offence charged in the first and second indictments are, upon the face of the pleadings, legally distinct, no averment that they are one and the same offence can make them so; therefore if the variance is in a thing material, the plea of autrefois acquit cannot be,sustained. See also Price v. The State, 19 Ohio R. 423.
In Mortimer’s case, 2 Va. Ca. 325, it was held that if a prisoner be acquitted of burning the barn of Josiah Thompson, he cannot plead this acquittal in bar of an indictment for burning the barn of Josias Thompson. That is a very strong case, and very much like the one under consideration. Indeed, they seem to be identical in principle as to the question we are now considering. See also Vaughan’s case, Id. 273.
But it is contended that two recent provisions of our statute law create a difference in this respect. Those provisions are sections 15 and 16 of chapter 195 of the Code, page 1218, which are in these words :
“15. A person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offence, notwithstanding any defect in the form or substance of the indictment or accusation on which he was acquitted.
“ 16. A person acquitted of an offence on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again upon a new indictment or other proper accusation, and tried and convicted for the same offence, nothwithstanding such former acquittal.”
*942 Those provisions were introduced into our statute law for the first time by the act of 1847-’8, called the criminal code, and constituted sections 10 and 11, on page 122, of the acts of that year. They were probably derived from the Massachusetts code, in which we find similar provisions. See General Statutes of Massachusetts, 1860, part iv, title 1, ch. 158, §§ 6 and 7; although there appear to be similar provisions in some of the other states. See Waterman’s notes to Ajjchbold, cited supra.
It is contended that under the first of those provisions of the Code, to wit: § 15, the prisoner may have been acquitted upon the facts and merits on the former trial, and that upon the demurrer to 'the plea of autrefois acquit in this case, it must be considered that he was so acquitted.
Conceding, at least, for the purposes of this case, that the prisoner might have been acquitted upon the facts and merits on the former trial; certainly he might have been acquitted, and was entitled to be acquitted, on the ground of a variance between the allegations of the indictment and the proofs, and as it does not appear in the record, and is not averred in the plea, that he was acquitted upon the facts and merits on the former trial, it must be inferred, in considering this demurrer to the plea, that he was acquitted on the ground of the variance. If he had been acquitted upon the facts and merits, the fact would, no doubt, have so appeared upon the record, and could easily have been made so to appear. And at all events, as it does not appear, it ought to have been averred in the plea. Section 15 gives a right to plead an acquittal on a former trial in bar of a second prosecution for the same offence, notwithstanding any defect in the form or substance of the indictment on *943 ■which he was acquitted, provided, or on condition that, the acquittal was upon the facts and merits of the case. To show himself entitled to the right, he by the averments of his plea, if the fact do not other- ° A ^ wise appear in the record, bring his case within the terms of the section; that is, aver that his acquittal was upon the facts and merits.
The section does not make the variance immaterial.
The accused must be acquitted upon that ground, if no other. And if acquitted, the presumption, in the absence of evidence to the contrary, is, that he was acquitted on that ground. But section 15 authorizes an acquittal in such case upon the merits, instead of upon the ground of variance; and if acquitted upon the merits, makes the acquittal a bar to a second prosecution for thé same offence. The accused, however, to be entitled to the benefit of the bar, must affirmatively show that his case comes within the meaning of the section. Section 16 does not vary the case. It does not relate to pleading, but is merely declaratory of the common law, that an acquittal on the ground of variance is not a bar to a second prosecution for the same offence; and therefore declares that a person acquitted upon that ground may be arraigned upon a new indictment, &c.: that is, it merely declares that the common law on this subject remains in full force, except so far as section 15 creates an exception. And a person, to get the benefit of that exception, must show that his case comes within its terms.
We are therefore of opinion that the court did not err in sustaining the demurrer to the plea of former acquittal and rejecting the plea.
3. The third assignment is that “the court erred in not excluding from the jury, on the ground of variance, the paper set forth in the second bill of exceptions.”
*944 The paper here referred to is the same with the order set forth in each count of the indictment except the last word in the body of said order is “accoimV’ and the last word in the body of said paper is ‘act,’ which is obviously a contraction for “account;” and except that at the foot of the said paper are written these words :
“Richmond, March 5th, 1875, received of T. A. Parker & Co. forty-seven 23-100 dollars in full of this order.
Thomas Moore.”
We think there was, clearly, no variance between the said paper and the said order. Certainly the difference between the word “ account” and the contraction “ act,” aforesaid is no variance, or at least is wholly immaterial. And certainly the receipt at the foot of' the said paper, and the absence of such a receipt at the foot of the said order, constitute no variance. The receipt is no part of the forged paper. The receipt is not charged to be forged. In fact it is a genuine instrument.
We therefore think the court did not err in not excluding from the jury the paper set forth in the second bill of exceptions.
4. The fourth assignment is, that “the court erred in excluding from the jury the alleged genuine order with the receipt upon it, mentioned in the third bill of exceptions, which the witness said had been presented to him on a former occasion by the prisoner.”
The third bill of exceptions states, “that on the trial of the cause, after the commonwealth had introduced as a witness one Truman A. Parker, who gave evidence tending to prove that the prisoner had pre *945 sented to Parker & Co. the order marked ‘A’ set forth in the said bill of exceptions, and which is made part hereof, and that the said order was false and forged, and that the prisoner had been paid the money thereon by Parker & Co.; and after the attorney for the commonwealth had turned the witness Parker over for cross-examination to the prisoner’s counsel, he was asked by them whether he had ever seen the prisoner before the interview at which said forged order was presented, and the witness replied that he had; that on one occasion before, to-wit: in September 1874, the prisoner had presented an order on Parker & Co., drawn by Allen & Bro., in favor of E. D. James, which had been paid by witness; but that at the time of the presentation of the second draft, the witness did not remember prisoner as the person who received the money for the first draft; and being asked by prisoner’s counsel, if the said James’ order was a genuine one, said it was. Witness was then asked by prisoner’s counsel to produce the said James’ order, and they then tendered it in evidence, said order having upon it a receipt in prisoner’s proper name for the amount thereof; but the attorney for the commonwealth objecting to the introduction of said draft in evidence before the jury, the court sustained the objection and ruled the draft out as evidence; to which opinion of the court, refusing to allow the said James’ draft to be given in evidence, the prisoner by his counsel excepted.”
The draft referred to seems to have been wholly irrelevant to the case before the court, and was therefore inadmissible. The draft had on it a receipt in prisoner’s proper name for the amount thereof. There was no specific tender by the prisoner of his said receipt *946 in evidence; but be may have supposed that if the draft was admitted as evidence the receipt endorsed - thereon would necessarily be in evidence also, and he may have intended to use the receipt for the purpose of comparison of hand-writing. Even if the receipt can be considered as having been offered in evidence and excluded, was it properly excluded? We are of opinion that it was. As a general rule, certainly, documents irrelevant to the issues on the record cannot be received in evidence at the trial to enable the jury to institute a comparison of hands, or to enable a witness so to do. This is clearly the rule in England, especially according to the modern cases, and although it is said that the American decisions on the subject are far from being uniform, yet it cannot be said that in this state the correctness of the rule has ever been questioned by any decision of this court. It has been uniformly received and acted on with us as a settled general rule. If there be any exceptions to it this case is not one of them. Eor the cases on this subject reference may be had to 1 Greenleaf on Ev., §§ 579-581, and notes; and Roscoe’s Criminal Evidence, page 164 and notes..
5. The fifth assignment is, that “ the court erred in excluding from the jury the testimony referred to in the fourth bill of exceptions, as to the incompetency or inability of the prisoner to have written the paper with the forgery of which he was charged.”
The fourth bill of exceptions states, “that upon the trial of this cause the prisoner offered a witness, Dr. Otho W. Kean, who proved that he was a resident of Goochland county, and had lived in the same neighborhood with the prisoner for many years; that he was a practising physician of many years standing, and *947 also superintendent of public schools of the county; that the prisoner was a teacher of public schools in his employment; that, as superintendent of the schools, it was his duty to inspect all the reports of the said Roger D. Burress as teacher for about four years; and that he had had other correspondence with him; that in this way his opportunities for acquiring a knowledge of his handwriting were very superior; that, in addition to this, he had inspected the reports of the said Roger D. Burress, and his correspondence with him, running through a period of four years, and terminating about a year ago, since this charge was brought against him, with the view of determining whether he could detect any variation in his writing, done at different times, or want of uniformity in his handwriting during the whole of this period, or any resemblance to the paper purporting to be an order drawn by Allen & Bro., which the witness had carefully examined before that time; and that, in his opinion, the order and signature is not the handwriting of this prisoner; that he wrote a good, plain, round hand, remarkably uniform, and fixed and well defined; and that from his knowledge of the prisoner and his handwriting, he did not believe that he could have written the order or the signature to the receipt, or either of them, if he had tried to do so. The attorney for the commonwealth objected to the introduction of that portion of the evidence of the said witness which states that “ he did not believe that the prisoner could have written the order and the signature, or either of them, if he had tried to do so,” and moved the court to exclude the same; and the court sustained this objection, and ruled out the evidence.” To which action of the court the prisoner excepted.
*948 We know of no principle of the law of evidence which would make the statement of the witness, excluded in this case, admissible evidence. It is a statement, not of facts, to which a witness generally testifies, but of mere matter of opinion, to which he rarely testifies, and only in special cases and for peculiar reasons. This is not such a case, and such reasons do not apply to it. An expert is sometimes called upon to give his opinion, which is evidence in a court of justice ; but certainly the witness in this case was no expert. He had no peculiar knowledge of handwriting, or of the capacity of men to write. He seems to have had a very good opportunity of becoming acquainted with the prisoner’s handwriting, and to have been very well acquainted with it. But certainly his opinion that the prisoner could not have written the order or the signature, if he had tried to do so, would be very unsafe and improper evidence to go before a jury. He proves that the prisoner “ wrote a good, plain, round hand, remarkably, uniform, and fixed and well defined;” in other words, that he wrote an excellent hand. And how thq witness could form an opinion from these facts, that the prisoner could not have written the order or signature if he had tried to do so, we cannot perceive. Why could he not have done so as well as any other man, skilled as he was in the use of the pen ? Almost every good writer writes a uniform hand, ordinarily. But that does not show that he cannot write a feigned hand. Of course he would write a feigned hand if he attempted to commit a forgery. From the facts stated by the witness, others would no doubt form a different opinion from the one expressed by him as to the capacity of the prisoner. But the law in its wisdom excludes all such opinions from the *949 jury, as calculated not to enlighten, hut to mislead them. 1 G-reenleaf on Ev., § 440 and seq. and notes; Roseoe’s Orim. Ev., p. 185 and seq. and notes.
The only remaining assignment of error was waived and abandoned by the learned counsel for the prisoner, and therefore will not be further noticed by us.
We think there is no error in the judgment, and that it ought to be affirmed.
Judgment arrirmed.